J-A27009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: I.J.L.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1152 MDA 2024 |

Appeal from the Decree Entered July 25, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 9-ADOPT-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: I.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1238 MDA 2024 |

Appeal from the Order Entered July 25, 2024
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-50-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: APRIL 11, 2025**

T.M. (Mother) appeals from the decree and order, entered in the Court

of Common Pleas of Franklin County, terminating her parental rights to I.J.L.L.

(Child) (born November 2017) pursuant to sections 2511(a)(1), (2), (5), (8)

and (b) of the Adoption Act,[1] and changing the permanency goal from reunification to adoption. After our review, we affirm.

Franklin County Children and Youth Service Agency (Agency) became involved with this family in 2022 following an investigation into the death of Child's three-year-old sibling.[2] In light of the Agency's concerns regarding parental substance abuse, current lack of a sober caregiver, environmental concerns within the home, and Child's risk of exposure to illicit drugs and controlled substances, the court adjudicated Child dependent and placed Child in emergency protective custody of the Agency. The Agency placed Child in emergency kinship care with maternal uncle and his spouse. *See* Adjudication and Disposition Order, 10/17/22.

Pursuant to the October 17, 2022 order, the permanent placement goal was reunification. Mother was ordered to: participate in a parental fitness assessment; obtain and maintain financial stability; obtain and maintain stable housing; participate in frequent and consistent visitation with Child;

_____

[1] *See* 23 Pa.C.S.A. §§ 2101-2938.

[2] Mother and B.L. (Father) both admitted to having used controlled substances on the day they found Child's now-deceased sibling unresponsive. Mother's drug screen tested positive for THC, cocaine, alcohol, methamphetamine, amphetamine, buprenorphine, and benzodiazepines. Father's drug screen tested positive for THC and cocaine. Father has filed a separate appeal from the decree and order involuntarily terminating his parental rights to Child and changing the permanency goal to adoption. *See In Re: Adoption of: I.J.L.L., a Minor, Appeal of: B.L., Father* at 1180 MDA 2024 and *In the Interest of: I.L., a Minor, Appeal of: B.L., Father* at 1181 MDA 2024.

- 2 -

participate in a drug and alcohol evaluation and follow recommended services or treatment; and, participate in random drug screening. ***See id.*** at 4.

On November 10, 2022, Mother participated in a parental fitness assessment provide by Alternative Behavior Consultants (ABC) and she began visitation with Child, supervised by ABC. ABC recommended, *inter alia*, that Mother participate in its Training for Improved Parenting Skills Program.

On February 1, 2023, the Agency became aware of a domestic dispute between the emergency kinship caregivers, which jeopardized Child's safety. On February 8, 2023, the Agency obtained an emergency order to modify Child's placement to foster care.

On March 8, 2023, Mother was arrested and charged with endangering the welfare of children with respect to the 2022 incident. She entered a plea of *nolo contendere* and the court sentenced her to 9-23 months' incarceration at the Franklin County Jail.

On November 6, 2023, Mother began supervised visits with Child at the county jail. While incarcerated, Mother attended seven of ten offered visits with Child. As of February 7, 2024, when the Agency filed its petition to terminate Mother's parental rights, Mother had attended four of six visits offered at the county jail. As of that date, Mother had not completed the TIPS parenting education program,[3] and, also as of that date, all of Mother's

---

[3] The record indicates Mother completed the TIPS program on July 19, 2024, five months after the Agency filed its petition to termination Mother's parental rights.

random drugs screens were positive for illicit drugs and controlled substances, including cocaine and THC. **See** N.T. Permanency Hearing, 6/11/24, at 19-20, 28. Prior to her incarceration, Mother attended one TIPS session and then either no-showed or cancelled two subsequent sessions. **_See_** N.T. Termination Hearing, 7/24/24, at 41-42. Since Child's removal from Mother's custody on September 30, 2022, until February 7, 2024, when the Agency filed its petition to terminate Mother's parental rights, Mother had not provided a negative drug screen. Further, Mother failed to participate in court-ordered mental health counseling. **_See id._** at 51; **_see also_** N.T. Permanency Hearing, 6/11/24, at 31.

The court held permanency review hearings on January 19, 2023, April 10, 2023, July 13, 2023, October 2, 2023, and January 11, 2024.

Child is currently in foster care. Child has a parent-child bond with foster parents and foster parents are an adoptive resource for Child. **_See_** N.T. Hearing, 6/11/24, at 41

Following the termination hearings held on June 11, 2024 and July 24, 2024, the court terminated Mother's parental rights to Child and changed the permanency goal to adoption. Mother filed timely notices of appeal from both

the order and decree.[4]   Both Mother and the trial court have complied with

Pa.R.A.P. 1925.[5]   Mother raises the following issues on appeal:

> 1) Did the [c]ourt err by failing to acknowledge that the [Agency] failed to meet the standard of proof of clear and convincing evidence?[6]

_____

[4] By order dated September 12, 2024, this Court consolidated these appeals. **See** Pa.R.A.P. 513.

Although Mother appeals from the decree changing the permanency goal from reunification to adoption, none of her issues or arguments pertain to the change of goal.  Further, because we conclude that the trial court did not abuse its discretion in granting the petition to terminate Mother's parental rights, this issue is moot.  **In re Adoption of A.H.**, 247 A.3d 439, 446 (Pa. Super. 2021) ("[T]he effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption.") (*citing* **Interest of D.R.–W.**, 227 A.3d 905, 917 (Pa. Super. 2020)).

[5] The court appointed Abigail J.W. Salawage, Esquire, as guardian *ad litem* (GAL) and counsel for Child.  Attorney Salawage supports the order and decree and the brief filed by the Agency.  **See** Brief for Appellee, GAL and Counsel for Child.

[6] This issue was not raised in Mother's Rule 1925(b) statement of errors complained of on appeal and is, therefore, waived.  **See** Pa.R.A.P. 1925(b) Statement, 8/7/24.  **See also In re Adoption of K.C.**, 199 A.3d 470, 474 (Pa. Super. 2018), *citing* **In re C.M.**, 882 A.2d 507, 515 (Pa. Super. 2005). We note also that Mother's Summary of Argument makes no reference to this claim.  **See** Appellant's Brief, at 8.  **See also In re M.Z.T.M.W.**, 163 A.3d 462, 465-466 (Pa. Super. 2017) (in termination of parental rights case, holding mother had waived appellate claims because they were not included in her concise statement of errors complained of on appeal and were not adequately developed in her appellate brief).  Nevertheless, even if we did not conclude Mother's issue was waived, we would deem her claim to be wholly without merit. The trial court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8), and (b).  We would only need to agree with the court as to any one subsection of section 2511(a), as well as section
*(Footnote Continued Next Page)*

2) Whether the trial court erred by finding that [t]ermination of [p]arental [r]ights was in the best interest of [C]hild when the evidence and record do not support such a finding.

3) Whether the trial court erred by not allowing counsel to put forth closing arguments in which the legal basis for Mother's case would have been made with regards to the criteria that should be used to evaluate services for incarcerated parents and the fact that the services performed by Mother were not first initiated after the filing of termination of parental rights.

4) Whether the trial court erred by not applying the proper criteria to evaluate the services Mother completed while incarcerated.

5) Whether the court erred by not giving the proper weight to the services Mother completed while incarcerated.

6) [Whether the court erred b]y not considering the services completed after Mother was incarcerated.

7) Whether the trial court erred by not adequately addressing the [p]aren't-[c]hild [b]ond issue.

Appellant's Brief, at 4-5.

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the

---

2511(b), in order to affirm. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Given the significant impact an involuntary termination of parental rights has on a parent, we have reviewed the record and conclude that the Agency proved, by clear and convincing evidence, that termination was proper under section 2511(a)(1) ("The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."), and that termination was in Child's best interests. The court's findings are supported by the record and we find no abuse of discretion. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). ***See*** N.T. Termination Hearing, 7/24/24, at 120-125.

findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

Mother first argues that the trial court erred by finding that termination of her parental rights was in Child's best interest and that the evidence of record does not support such a finding. However, Mother provides no argument in her brief on this issue. ***See*** Appellant's Brief, at 10-35. Rule 2111(a)(8) of the Pennsylvania Rules of Appellate Procedure requires that every appellant's brief shall contain, *inter alia*, a distinct section setting forth

its relevant legal arguments in support of its questions involved. Pa.R.A.P. 2111(a)(8). Rule 2119 further mandates:

> **(a)** **General rule**. The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002). *See also Butler v. Illes*, 747 A.2d 943 (Pa. Super. 2000) (where appellant fails to properly raise or develop issues on appeal, or where brief is wholly inadequate to present specific issues for review, this Court can decline to address appellant's claims on merits).[7] Mother, therefore, has abandoned this claim as well.[8] *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address subsection 2511(b) where appellant did not make argument concerning that subsection).

---

[7] We note that Mother's brief does not comply with Rule 2119(a) with respect to any of her issues raised on appeal. Her arguments are not divided and do not have distinct headings; instead, they are grouped together in a run-on narrative.

[8] Even if Mother had not waived her challenge to section 2511(b), we would conclude that that any challenge lacks merit, for the reasons discussed at length at the conclusion of the termination hearing and set forth in part, *infra*. *See* N.T. Termination Hearing, 7/24/24, at 108-25.

Next, Mother argues the trial court erred by not allowing counsel to put forth closing arguments in which the legal basis for Mother's case would have been made regarding the criteria that should be used to evaluate services for incarcerated parents and the fact that the services provided to Mother were not first initiated after the filing of termination of parental rights.

At the close of evidence, the trial court announced it would recess and then give its ruling. *See* N.T. Termination Hearing, 7/24/24, at 108. Mother's counsel made no request to offer a closing argument. The trial court, therefore, found this issue waived. *See* Rule 1925(a) Opinion, 8/13/24, at 3. Upon resuming proceedings, at which the court began to issue its ruling, Mother's counsel interrupted and inquired whether he would have an opportunity to make a closing argument. *See* N.T. Termination Hearing, *supra* at 108. The court declined, stating it did not require closing arguments, and Mother's counsel did not object. We, therefore, agree with the trial court's finding that this issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the time on appeal.").

Additionally, our rules of appellate procedure and our case law set forth "the well-established requirements for preserving a claim for appellate review." *Karn v. Quick & Reilly Inc*., 912 A.2d 329, 336 (Pa. Super. 2006). "This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure, Pa.R.A.P. 2101–2119." *Karn*, 912 A.2d at 336. "Appellate arguments [that] fail to adhere to these rules may be considered waived, and arguments [that]

are not appropriately developed are waived." *Id. See also* Pa.R.A.P. 2111–2119 (discussing required content of appellate briefs and addressing specific requirements of each subsection of brief on appeal). Here, Mother has cited no authority or support in her brief for the proposition that the court is required to entertain closing arguments prior to issuing its decision in a termination of parental rights case. *See In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010) (where appellate brief fails to provide discussion of claim with citation to relevant authority or fails to develop issue in any other meaningful fashion capable of review, claim is waived). The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinely*, *supra* at 161 (citing, *inter alia*, Pa.R.A.P. 2119(b)). "Without a reasoned discussion of the law . . . our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for [Mother]." *Id.* (internal citations and quotation marks omitted).

We address Mother's next three issues together as they each challenge the court's consideration of the services and programs Mother completed during and after her incarceration. Although we are hampered by Mother's failure to clearly delineate her arguments in her brief, we are able to determine that her concern is that the trial court did not properly weigh or consider the treatment she completed during and after her incarceration. These claims are belied by the record.

The record indicates that, while incarcerated, Mother completed the "Franklin County Jail Drug and Alcohol Program: First Steps" on May 5, 2023, and the "Franklin County Jail Stress and Anger Management Program" on August 8, 2023. Additionally, Mother was evaluated by telephone on May 29, 2024, and, "based on information submitted by the [A]gency, and the American Society of Addiction Medicine (ASAM) Criteria," she was informed by the Franklin/Fulton Drug and Alcohol Program that she was recommended "to attend no further treatment." **See** Letter from Jordan Bailey, Case Management Specialist, 5/29/24. **See also** N.T. Termination Hearing, 7/24/24, at 24-29.

Mother did acknowledge, however, that on November 2, 2022, prior to her incarceration, Franklin/Fulton Drug and Alcohol had recommended she participate in "intensive outpatient treatment," and, as of the July 24, 2024 hearing date, Mother had yet to comply with that recommendation. **See id.** at 46-49.

At the conclusion of the termination hearing, the court set forth its findings on the record. **See id.** at 108-125. The court gave a careful and comprehensive review of the evidence, and acknowledged the programs Mother completed both before and during incarceration. The progress Mother had made was clearly not lost on the court. The court, however, gave little credence to the Franklin/Fulton Drug and Alcohol Program's recommendation that Mother "attend no further treatment." Specifically, the court stated:

And so we're left here with a situation where the parties claim they don't need further treatment. One or both are under medication-assisted treatment. We're aware that legally you can't prescribe [Medication-Assisted Treatment] (MAT) without a diagnosis of a substance use disorder. And so we're left here wondering how [do] you explain all these dichotomies that there's a need for [MAT], which implies a diagnosis of a substance use disorder. **We have Mother [] obtaining recommendations after the petitions were filed saying [she does not] need treatment. That's just inexplicable to the [c]ourt beyond saying that it would appear that the evaluators didn't have all of the information they needed to have. That's the only rational explanation for a recommendation of no treatment.** Considering all the other things that we know, including the history of use, the fact that [Mother appears] to [be] diagnosed with substance abuse disorders such as [she's] prescribed [MAT]. **So we're left wondering what we don't know. And what we don't know is—would have been largely ameliorated had Mother [] obtained [a] drug and alcohol evaluation as required and followed the recommended treatment. Particularly, prior to [] being incarcerated. We certainly don't accept what [she] did at the jail. To the [c]ourt's knowledge, the jail is not an approved drug and alcohol treatment provider under the laws of this Commonwealth and they were specifically told by the Juvenile Court that that does not satisfy the conditions required by the Court.**

*Id.* at 118-19 (emphasis added).

After our review, we find no merit to Mother's claims that the court did not consider or properly weigh her progress during and after incarceration. Pursuant to subsection 2511(a)(1), the court did not have discretion to consider Mother's efforts after February 7, 2024, when the Agency filed its petition to terminate her parental rights. *See* 23 Pa.C.S.A. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1) . . ., the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing

- 12 -

of the petition."). Therefore, we agree with the court's decision to remove from its analysis the efforts first initiated by Mother subsequent to that date. We conclude the court's findings are supported by the record and the court's legal conclusions are neither in error or an abuse of discretion. ***S.P.***, ***supra***. ***See also In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (standard of review in termination of parental rights cases requires appellate courts to accept findings of fact and credibility determinations of trial court if they are supported by record; if the factual findings are supported, appellate courts review to determine if trial court made an error of law or abused its discretion).

In her final claim, Mother argues the trial court erred by not adequately addressing the parent-child bond issue. This claim, too, is belied by the record. The court discussed the bond between Mother and Child at length, but concluded that the best interests of Child, particularly with respect to permanency and stability, weighed in favor of severing that bond. Specifically, the court stated its findings on the record, which we set forth at length:

> And we will turn now to the termination serving the best needs and welfare of the child. And we'll note specifically that under [sub]section[s] (a)(1) and (a)(8), the [c]ourt does not consider the efforts by the parents to remedy those conditions that were first initiated after the filing of the petitions. Subsection [b] requires the [c]ourt, in terminating the rights of a parent, to [give] primary consideration to the developmental, physical, and emotional needs and welfare of the child.
>
> So the question here, we often refer to this analysis in terms of a bond between Mother [] and [Child] and whether termination or severing that bond is in the child's best interest. **There's no doubt in the [c]ourt's mind there's a bond between [Child**

- 13 -

**and Mom []. But that is not the question. The question is not is there a bond. The question is[,] will severing that bond promote the welfare and general care of [Child]. And in that analysis the [c]ourt considers the entire case, before and after the petition was filed. Everything that we know about [Child] and Mom [] that we've heard or that is in the exhibits, we consider that in evaluating whether or not termination of the parental rights best serves the needs and welfare of [Child] and so it's [a] much broader [] review of things.**

So in considering that, we've evaluated such things as the time period that [C]hild has been in placement. That's important because under our law, the primary goal of all of this is to provide permanency for the child. That's the child's rights under our law. And permanency is not just who they're living with. Permanency is providing the resources and the home life for the child so that they know where they belong. Normally, that's with their family, their biological relatives. But when we're faced with these kinds of cases, that is not always the options for the [c]ourt. **And what we have to consider is what is the relationship, not only of Mom [] with [Child] but the foster parents with [Child] and what is the nature of that relationship and which relationship provides the permanency for [Child] or is more likely to provide the permanency for [Child] and, if so, is it clearly convincing to the [c]ourt.** We're satisfied on the evidence that we've heard and [that] we have been found to be credible, that the permanency for [Child] in this case [] is [achieved] by severing the parental rights. He is a child who is set to turn, it looks like, 7, this year in November and so he is moving out of infancy and into living an academic life in school and heading towards adolescence. And the lessons he learns in life and that he has learned so far and that are being taught to him now by his foster parents are the ones that are going to serve him for the rest of his life. And our law protects that so carefully or advocates for that so carefully because we know, meaning our culture, knows for a child to have the best start in an adult life they can have, they have to know who they are, [where] they belong, and they have to [have] permanency. That's why it is so important in our adoption laws, in our termination laws, to promote the permanency for the child because you get one shot at it. If they don't learn it now, it's a very good possibility they won't ever learn it. So the idea is to provide them with an environment where they can be raised in a solid environment to

provide them with everything they need, basic needs, clothing, food, shelter, medical, dental[,] vision, and emotional needs. Who do they look to for support? Who do they look to for guidance? Who did they look to for discipline? Who do they look to [] teach them the ways of the world and prepare them for adulthood? And right now[,] and for the last 22 months actually[.] From the time he was removed from his uncle's home and placed with the foster family, since that time, the foster family has been providing that. And it is time, in the [c]ourt's view on the evidence that we have heard, to cement that for [Child] going forward. So the [c]ourt is satisfied clearly and convincingly that termination of parental rights in this case is in [Child's] best interest for his welfare generally. So the decrees are granted.

N.T. Termination Hearing, 7/24/24, at 121-25 (emphasis added). ***See id.***, 6/11/24, at 46 (case manager testified that despite bond, Child is thriving in foster care, is attached to foster parents, and calls foster parents "mom" and "dad"). ***See also*** Decree/Findings of Fact, 7/24/24 (foster parents are willing to be permanent, adoptive resource for Child, if and when he is available for adoption; foster parents have demonstrated they will ensure [Child's] safety, stability, basic needs, best interests and general welfare; [Child] has formed a parent-child relationship with foster parents).

Contrary to Mother's claim, the trial court gave a very thoughtful and considered analysis of the parent-child bond issue, focusing on Child's best interests. We agree with the trial court that Child deserves permanency and stability, and we find no abuse of discretion or error of law. ***R.J.T.***, ***supra***. ***See also Adoption of Atencio***, ***supra*** at 1066 (even where facts could support an opposite result, as is often case in dependency and termination cases, appellate court must resist urge to second guess trial court and impose its own credibility determinations and judgment; instead we defer to trial

judges so long as factual findings are supported by record and court's legal conclusions are not result of error of law or abuse of discretion). Accordingly, we affirm.

Decree and Order affirmed.

Judgment Entered.

signature

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2025